NOTICE

Decision filed 01/16/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240401-U

NO. 5-24-0401

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clark County. |
| | ) | |
| v. | ) | No. 22-TR-734 |
| | ) | |
| AUSTIN S. LOWRY, | ) | Honorable |
| | ) | Tracy W. Resch, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HACKETT[*] delivered the judgment of the court.
Presiding Justice Cates and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The defendant's conviction for failure to reduce speed to avoid an accident is affirmed where, viewing the evidence in the light most favorable to the State, the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt. Also, the trial court did not abuse its discretion in sentencing the defendant to six months of conditional discharge.

¶ 2     Following a bench trial, the defendant, Austin S. Lowry, was found guilty of failure to reduce speed to avoid an accident (625 ILCS 5/11-601(a) (West 2020)). The trial court then entered a judgment on the conviction and sentenced the defendant to conditional discharge for six months. On appeal, the defendant argues that the State failed to prove him guilty beyond a reasonable doubt

---

[*]Justice Welch was originally assigned to the panel prior to his death. Justice Hackett was later substituted on the panel and has read the briefs and listened to oral argument.

1

and that the trial court abused its discretion in sentencing him to conditional discharge. For the reasons that follow, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4     On August 26, 2022, Illinois State Police (ISP) trooper, Timothy Moore, issued a citation to the defendant for "driving too fast for conditions or failure to reduce speed to avoid an accident" after a vehicle the defendant was driving struck the rear of a motorcycle, causing injury to its driver and killing the passenger. The matter proceeded to bench trial on the charge of failure to reduce speed to avoid an accident.

¶ 5     At the December 2023 bench trial, the following testimony was presented. Robert Ryan, a correctional officer with the Clark County Sheriff's Department, testified that at approximately 5 p.m. on August 26, 2022, he was traveling west when he saw that a motorcycle accident had occurred at the intersection of Route 40 and Baystown Road. Officer Ryan explained that there was a downhill slope on that section of Route 40. When Officer Ryan was at the "crest of the hill coming down," he observed a "cloud of dust" in front of him. Upon his arrival at the accident scene, he noticed a motorcycle lying in the road and an unresponsive male under the guardrail. The male was later identified as Joseph Roseberry. Officer Ryan also observed a female, who appeared to be deceased and was later identified as Tasha Davis, lying in the roadway. Officer Ryan was the first person on the scene.

¶ 6     Jeremiah Hanley, a deputy sheriff at the Clark County's Sheriff's Department, testified that he was dispatched to the crash site at approximately 5:07 p.m. Deputy Hanley noted that Baystown Road was a public county road, and Route 40 was a U.S. highway. As he approached the accident scene from the west, he observed a passenger car with extensive front-end damage facing west on the north side of the road, a motorcycle lying on its side, and pieces of the motorcycle in various

2

places. Deputy Hanley also observed an unresponsive female lying on the ground next to the guardrail; and to the east, a male lying on the ground, partly under the guardrail. The male, who was identified as Roseberry, was the driver of the motorcycle, while the female, who was identified as Davis, was the motorcycle passenger.

¶ 7    Deputy Hanley observed that there was extensive damage to the front of the vehicle, which included damage to the front bumper, grill, hood, and windshield area. He did not remember the make of the vehicle but noted that it was a small, four door passenger car. Deputy Hanley noted that the motorcycle's gas tank and seat were no longer part of the motorcycle, and the rear end was "tore up pretty bad." He noted that motorcycle debris was "everywhere." While at the scene, Deputy Hanley spoke with the defendant, and the defendant admitted that he was the driver of the car. Deputy Hanley overheard the defendant tell Officer Ryan that the sun was in the defendant's eyes when the defendant came over the hill, and he could not see. Deputy Hanley confirmed that, at that time of day and during that time of year, the sun would be in a driver's eyes when driving over that particular hill. Deputy Hanley attempted to speak to Roseberry at the scene, but Deputy Hanley noted that Roseberry was in a lot of pain and was in and out of consciousness.

¶ 8    Timothy Moore, who was employed as an ISP trooper at the time of the accident but was employed as a traffic crash reconstruction officer at the time of the trial, testified that he arrived at the crash site shortly before 6:30 p.m. At the crash site, Officer Moore observed that the front, middle bumper area of the red Chevrolet Impala was pressed into the engine compartment area, indicating an "extensive collision." Officer Moore spoke with the defendant about how the accident occurred, and Officer Moore noted that the defendant stated as follows:

3

"The Defendant *** was traveling westbound on Route 40. Just as he crested over the hill, he observed the motorcycle. He knew the motorcycle was there. As it continued westbound, he's not sure why, but the motorcycle was in the front of his vehicle."

Officer Moore indicated that the speed limit on Route 40 was 55 miles per hour. When asked to describe the section of Route 40 where this accident occurred, Officer Moore indicated that for a driver traveling west over the hillcrest, there would be a "straight downgrade for approximately a quarter mile or a little longer" until the driver reached the intersection. Officer Moore also noted that, other than the sunlight, there were no obstructions in the road that would have kept the defendant from seeing the motorcycle, as it was a straight road. Officer Moore asked the defendant if, prior to striking the motorcycle, the sun impaired the defendant's vision, and the defendant responded that he did not know.

¶ 9    On cross-examination, Officer Moore indicated that his in-car vehicle recording was activated and recording video and audio for the majority of the time that he was at the scene. However, Officer Moore deactivated his microphone while he was sitting in his squad car working on the crash report and waiting on the traffic crash reconstruction officer. When he spoke with the defendant, he had not reactivated his microphone, so it was not recording. Officer Moore acknowledged that, on the traffic crash report, he indicated that it was unknown whether the defendant's vision was obstructed. However, Officer Moore also acknowledged that, before completing the report, Deputy Hanley told him about overhearing the defendant say that the defendant could not see because of the sun. Officer Moore explained that he had entered unknown on the report because he was not able to verify whether the sun had actually impaired the defendant's vision.

4

¶ 10    Officer Moore also testified that the defendant was taken to the hospital to be examined and to obtain blood and urine testing for alcohol and drugs, but Officer Moore did not know the results of the blood and urine testing. However, Officer Moore noted in the accident report that the defendant appeared to be unimpaired. Officer Moore indicated that there were no witnesses to the accident. He acknowledged that he had no personal knowledge of what the motorcycle was doing at the time of the accident. He also acknowledged that he had no personal knowledge of the location or the speed of the motorcycle and the defendant's vehicle, or the distance between the two, at the time that the defendant's vision was impaired by the sun. Officer Moore could not ascertain whether the defendant had reduced the speed of his vehicle prior to approaching the hill.

¶ 11    Joseph Roseberry testified that on August 26, 2022, the date of the accident, he was working remotely from his camper that was located about one mile from the accident, down Baystown Road. At around 10:30 a.m. or 11 a.m., he picked up Davis at her residence, and they went to lunch. However, he had no recollection of the events that occurred after they departed the restaurant.

¶ 12    Ryne Brieseacher, an ISP traffic reconstruction officer, testified about the damage to the defendant's vehicle and the motorcycle. With respect to the defendant's vehicle, Officer Brieseacher indicated that the "centroid of damage" was toward the center of the vehicle and that the front area bumper was pushed rearward toward the engine compartment with damage also to the hood and the windshield. Officer Brieseacher observed that the motorcycle had rear damage to the fender and to the wheel and tire combination and that the fuel tank was dislodged from the motorcycle. He also observed that the taillight and the turn signal on the motorcycle were broken, and it appeared that the bulb was also broken. Officer Brieseacher observed a tire mark on the road, but he did not observe any preimpact tire marks. He explained that when the defendant's

5

vehicle struck the rear tire of the motorcycle, it caused the motorcycle wheel to bend and lock up due to the damage, which then caused the tire mark on the road.

¶ 13    Officer Brieseacher testified that for westbound traffic, Route 40 in this area was a downgrade toward the impact site. He did not measure the distance between the crest of the hill and the impact site. Officer Brieseacher determined that the defendant's vehicle was traveling between 56 to 69 miles per hour at the time of impact, and the motorcycle was traveling between 8 and 20 miles per hour at that time. Based on the data retrieved from the event data recorder of the defendant's vehicle, Officer Brieseacher calculated the time between when the defendant braked and the collision as approximately "[h]alf of one second."

¶ 14    On cross-examination, Officer Brieseacher acknowledged that he was told that the defendant informed the first two officers at the scene that the defendant's vision was impaired because of the sun. Officer Brieseacher spoke with the defendant at the accident location, but Officer Brieseacher did not recall asking the defendant whether the sun impaired the defendant's vision. Officer Brieseacher acknowledged that he was unable to ascertain the location of the defendant's vehicle or the motorcycle at the time that the defendant was blinded by the sun. Officer Brieseacher discussed the principles of perception, processing, and reaction upon perceiving a threat. Specifically, he explained that it would take a driver about 1.5 seconds to perceive a threat, decide how to react to it, and then act upon the threat. He acknowledged that, during that time, the driver's vehicle would presumably still be in motion. He also acknowledged that the perceived threat could be sun blindness. Officer Brieseacher did not know whether, assuming that the defendant's vehicle was traveling the speed limit, the defendant had sufficient time to avoid the collision once he observed the motorcycle right in front of him.

6

¶ 15    At the close of the State's evidence, defense counsel made a motion for directed verdict, arguing that the State had failed to prove the defendant guilty beyond a reasonable doubt. After hearing arguments from counsel, the trial court denied the motion. The defendant then presented the following testimony.

¶ 16    Officer Ryan testified that while he was at the scene, he noted that the defendant was distraught, emotional, and in shock. The defendant also repeated three or four times that he could not see the motorcycle because of the sun.

¶ 17    Deputy Hanley testified that he suggested to the defendant's family members, who had arrived at the scene following the accident, that they take the defendant to the hospital for a medical assessment and for blood and alcohol testing. When Deputy Hanley asked the defendant about the accident, the defendant indicated that he did not see the motorcycle because the sun was in his eyes. Officer Ryan was also present during this conversation. After hearing the testimony and closing arguments, the trial court took the case under advisement.

¶ 18    On December 20, 2023, the trial court entered a written order, in which the trial court found that the State had proven the defendant guilty beyond a reasonable doubt of failure to reduce speed to avoid an accident (625 ILCS 5/11-601(a) (West 2020)). The trial court indicated that to prove the defendant guilty of this offense, the State had to establish that the defendant drove carelessly and also failed to reduce his speed to avoid colliding with the motorcycle. The trial court noted that the testimony of the witnesses as well as the photographs of the scene depicted a violent collision which occurred when the defendant's vehicle rear-ended the motorcycle, which caused severe damage to both vehicles, detached the gas tank from the motorcycle frame, compressed the car's front bumper into the engine compartment, and scattered debris. The trial court also noted that the center of the car's windshield had a large area of radial pattern damage likely caused by

7

the impact of Davis's body. The trial court noted that both vehicles were traveling westbound on Route 40, the speed limit was 55 miles per hour, and the road was straight between the hill crest and the intersection with no physical obstructions. The trial court also noted that Officer Brieseacher found no preimpact tire marks on the pavement, the absence of which created a reasonable inference that the defendant did not brake before impact. Officer Brieseacher estimated that, at the time of impact, the defendant's vehicle was traveling between 56 and 69 miles per hour, and the motorcycle was traveling between 8 and 20 miles per hour. The trial court indicated that it was reasonable to infer from the circumstantial evidence that the motorcycle had slowed to execute a right turn on Baystown Road.

¶ 19    The trial court indicated that the defendant was driving west into the evening sun, and the defendant was aware that a motorcycle was in front of him because he told Officer Moore that he had observed the motorcycle traveling ahead of him when he crested the hill. The defendant had told Officer Ryan that he did not see the motorcycle because of the sun. The trial court then noted, "[The defendant's] statement connects a hazardous condition—the sun in his eyes—with impaired vision that obstructed his observation of the motorcycle. That condition affected [the defendant's] ability to drive safely." The trial court noted that section 11-601(a) of the Illinois Vehicle Code (Code) (*id.*) imposed a duty on drivers to decrease their speed when confronted with a "special hazard" by reason of weather or highway conditions. The trial court found that the existence of the hazardous condition required the defendant to reduce his speed to the extent necessary so as not to endanger the person or property of others. Thus, the trial court found that the State had proven that the defendant acted carelessly by failing to reduce his speed when confronted with the sun's glare.

¶ 20    Also, the trial court noted that section 11-601(a) of the Code (*id.*) required a driver to decrease speed as necessary in the exercise of reasonable and proper care when "approaching a

8

hill crest." The trial court noted that a driver approaching a hill crest was unable to see the blind side of the hill, and the driver's visibility was not restored until the driver passed over the hill crest. The trial court found that this was the situation that the defendant encountered on approaching the hill crest while traveling westbound on Route 40. Thus, the trial court found that the defendant had a legal duty to anticipate the risk that he would encounter a vehicle or obstruction on the blind side of the hill. The trial court indicated that section 11-601(a) of the Code (*id.*) imposed a duty on the defendant, when approaching the hill crest, to reduce his speed in anticipation of the heightened risk presented by his inability to see the road on the other side of the hill with the attendant risk that he might encounter a vehicle or obstruction that was previously outside his range of vision. Thus, the trial court found that the State had proven that the defendant also acted carelessly by failing to reduce his speed when approaching the hill crest.

¶ 21    The trial court then indicated that the vehicle crash reconstruction evidence, which revealed that the defendant was traveling 56 to 69 miles per hour at the time of the collision, created a strong inference that the defendant was driving at an unreasonable speed and that he had failed to reduce his speed upon approaching the hill crest and upon being confronted with sun blindness that impaired his vision. Based on the above, the trial court found that the State had proven, beyond a reasonable doubt, that the defendant committed the offense of failure to reduce speed to avoid an accident.

¶ 22    On January 10, 2024, the defendant filed a motion for entry of judgment of acquittal, arguing that the State failed to prove, beyond a reasonable doubt, that the defendant had acted carelessly and failed to reduce his speed to avoid the accident. After a hearing on February 14, 2024, at which the trial court heard arguments on the motion for judgment of acquittal, the trial court denied the motion.

9

¶ 23     On March 13, 2024, the trial court held the sentencing hearing. At the sentencing hearing, the State presented victim impact statements from Roseberry and Cassie Bumba, Davis's daughter. Roseberry read his victim impact statement to the trial court, in which he discussed the extent of the injuries he had sustained in the collision; the lengthy recovery process; and the impact the accident had on his life as well as on the lives of his family, which included the financial burden caused by extensive medical bills and missing work during recovery. Roseberry also expressed his frustration that the defendant was able to continue living a normal life after the accident and that the only offense the defendant was charged with was failure to reduce speed to avoid an accident. Roseberry further expressed his frustration with the defendant pleading not guilty to the offense, which resulted in 18 months of court proceedings. Specifically, Roseberry said as follows: "[The defendant] is worried about being inconvenienced for a year when [Davis] was killed and my life was completely altered. This is unforgiveable and cruel. There are no words to describe the cruelty in that."

¶ 24     Bumba also read her victim impact statement to the trial court. In her statement, Bumba talked about the emotions that she felt upon learning of her mother's death, how the loss impacted the entire family, how she continued to grieve for her mother, and how she had relied on her mother for support. Bumba described her feelings toward the defendant, stating as follows:

> "I would also like to add how absolutely disappointing and difficult it's been to watch the person responsible for my mom's death fail to take any responsibility for his actions and fight a speeding ticket every step of the way *** dragging this out for over a year and a half. He has shown zero sympathy for his actions to the point of having his attorney contact our estate attorney who has nothing to do with this case more than once asking us to drop this charge so he doesn't lose his license."

Bumba then stated that her mother's life was worth a lot more than court supervision and asked the trial court to impose a conviction that would permanently be on the defendant's record.

¶ 25    The defendant then presented evidence in mitigation, which included testimony from Megan Craig, one of the defendant's sisters, who talked about how distraught the defendant was following the accident and described how his personality had changed from happy and easygoing to someone who rarely smiled and kept to himself. Craig also talked about how the defendant had no previous criminal history; he was required to drive for his employment; and if a judgment of conviction was entered against him, the defendant would lose his license. Doug Dahnke testified that he had previously employed the defendant and talked about how the defendant was a trustworthy employee and had integrity, about how the defendant was always willing to help out, and about how it was important for the defendant to be able to drive to maintain his employment and that the defendant's employment options would be limited if he was unable to drive. William Wofford, the defendant's former coach and teacher, talked about how the defendant was a team leader and how he never had any problems with the defendant. William Vincent, the defendant's neighbor, described the defendant as reliable, hardworking, responsible, empathetic, and kind-hearted.

¶ 26    The trial court did not ask the defendant whether he wished to make a statement in allocution before his sentence was pronounced. During arguments, the State sought a six-month sentence of conditional discharge while the defendant's counsel sought a disposition of supervision. Following arguments, the trial court entered a judgment of conviction and sentenced the defendant to conditional discharge for a period of six months. The trial court indicated that in making this decision, it had considered the testimony of the witnesses, the victim impact statements, the exhibits entered into evidence, the circumstances of the offense, the relevant

11

statutory factors, and the arguments of counsel. The trial court stated that the harm, grief, and misery caused by the defendant's traffic offense was incalculable and that the defendant was responsible for that harm, grief, and misery. The trial court noted that if the defendant lost his driving privileges as a result of the conviction, that was a consequence of him violating the traffic laws. The trial court stated that, "if [the defendant lost] his license—and that [would] be the decision of the Secretary of State—[he had] choices to deal with his loss of driving privileges." The trial court noted that a sentence of supervision would not be in the interest of justice, and it would denigrate the seriousness of the offense and its consequences. The defendant appeals his conviction and sentence.

¶ 27                                II. ANALYSIS

¶ 28     The defendant contends that the State failed to prove him guilty beyond a reasonable doubt of failure to reduce speed to avoid an accident because there was insufficient evidence that he drove carelessly and failed to reduce his speed. When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A reviewing court does not retry the defendant and must accept all reasonable inferences in favor of the State. *People v. Harris*, 2018 IL 121932, ¶ 26. It is the responsibility of the trier of fact to determine the credibility of the witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Galarza*, 2023 IL 127678, ¶ 25. Thus, "a reviewing court will not substitute its judgment for the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Bradford*, 2016 IL 118674, ¶ 12. On appeal, we will not

reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *Id.*

¶ 29 Circumstantial evidence is sufficient to sustain a criminal conviction as long as the evidence satisfies proof beyond a reasonable doubt of the elements of the charged crime. *Id.* However, the trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. *Galarza*, 2023 IL 127678, ¶ 27. It is sufficient if all of the evidence taken together proves the defendant's guilt beyond a reasonable doubt. *Id.*

¶ 30 Here, the defendant was convicted of failure to reduce speed to avoid an accident in violation of section 11-601(a) of the Code (625 ILCS 5/11-601(a) (West 2020)). Section 11-601(a) provided as follows:

"No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions. Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." *Id.*

Our supreme court has held that to prove a defendant guilty of failing to reduce speed to avoid an accident under this provision, the State must establish beyond a reasonable doubt that the defendant

13

drove carelessly and that he failed to reduce his speed to avoid a collision. *Galarza*, 2023 IL 127678, ¶ 29.

¶ 31 The defendant here first argues that the State failed to prove that he drove carelessly immediately prior to the accident. Specifically, the defendant contends that the mere fact that the estimated speed of his car at the time of the crash may have been 56 miles per hour in a 55 miles per hour zone was insufficient to prove that he was driving carelessly immediately before the accident. In addition, the defendant notes that the State presented no evidence as to the specific location where he was blinded by the sun or any evidence of the speed of, and the distance traveled by, the defendant's vehicle as it descended the hill before he was blinded by the sun and before the motorcycle reduced its speed. Instead, the defendant contends that the only evidence relating to speed presented by the State was the estimated speed ranges of the defendant's vehicle and the motorcycle at the time of the accident. The defendant also argues that the State failed to present any evidence that the time between the defendant being blinded by the sun and the accident would have afforded him sufficient time to perceive, and process, the unexpected sun blindness and then react to avoid the accident. Thus, the defendant argues that the State was unable to prove beyond a reasonable doubt that the defendant failed to use due care during the interim between being blinded by the sun and the reappearance of the motorcycle, and the defendant applying his brakes.

¶ 32 The defendant makes similar arguments with regard to the trial court's finding that he also acted carelessly by failing to reduce his speed when approaching the hill crest. The defendant notes that the only evidence of his speed was in regard to the estimated speed ranges of his vehicle and the motorcycle at the time of the accident, which was over a quarter mile from the hill crest. The defendant also notes that the State did not present any evidence of the speed of his vehicle before, and as, it approached the hill crest.

14

¶ 33    Section 11-601(a) of the Code (625 ILCS 5/11-601(a) (West 2020)) imposes a duty on motorists to exercise due care. *Galarza*, 2023 IL 127678, ¶ 33. The supreme court has defined "due care" as the degree of care that ordinarily prudent persons are accustomed to exercising under the same or similar circumstances. *Id.*

¶ 34    Construing all the evidence and reasonable inferences therefrom in the light most favorable to the State, we find that the State here provided sufficient evidence for the trial court to conclude that the defendant drove carelessly. The defendant observed the motorcycle traveling in front of him as he crested the hill, but the defendant lost sight of the motorcycle due to his vision being impaired by the sun. Other than the sun's glare, which, at certain times of the day, would restrict a driver's vision, there were no other obstructions on that portion of Route 40. The speed limit on Route 40 was 55 miles per hour; and at the moment of impact, the defendant's vehicle was estimated to be traveling between 56 to 69 miles per hour while the motorcycle was estimated to be traveling between 8 to 20 miles per hour. Given that Roseberry's camper was located down Baystown Road, it was reasonable for the trial court to infer that Roseberry had slowed to execute a right turn on Baystown Road.

¶ 35    In addition, Officer Brieseacher testified that he did not observe any preimpact tire marks on the road, and he calculated the time between when the defendant braked and the collision as approximately "[h]alf of one second." According to Officer Moore, the front, middle bumper area of the defendant's vehicle was pressed into the engine compartment area, which indicated to him that an "extensive collision" had occurred. Officer Brieseacher observed that the motorcycle had rear damage and that the fuel tank was dislodged from the motorcycle. Deputy Hanley noted that the motorcycle was in pieces, the gas tank and seat were no longer part of the motorcycle, and the rear end was "tore up pretty bad."

15

¶ 36    As found by the trial court, the existence of the hazardous condition, *i.e.*, the defendant being blinded by the sun, required the defendant to reduce his speed to the extent necessary so as to not endanger the motorcycle that he knew was traveling in front of him. Given the totality of the evidence and the reasonable inferences that could be made from the circumstantial evidence, the trial court could have reasonably found that the defendant, despite knowing that the motorcycle was traveling in front of him, that his vision was impaired due to the sun, and that he had lost sight of the motorcycle, did not exercise due care in continuing to travel on the downgrade without reducing his speed to the extent necessary to avoid the collision. Thus, we conclude that the trial court's finding that the defendant acted carelessly by failing to reduce his speed when confronted with the sun's glare was not so unreasonable, improbable, or unsatisfactory that it justifies reasonable doubt of the defendant's guilt.

¶ 37    In making this finding, we acknowledge that Officer Brieseacher was unable to ascertain the location of the defendant's vehicle or the motorcycle, or the speed at which the defendant's vehicle or the motorcycle was traveling, at the point when the defendant's vision was impaired by the sun. We also acknowledge Officer Brieseacher's testimony that he could not ascertain whether there was sufficient time or distance for the defendant to avoid the collision. However, this testimony was presented to, and considered by, the trial court when the trial court found that the defendant drove carelessly. As previously noted, it is the trier of fact's responsibility to weigh the evidence, and the reviewing court should not substitute its judgment for that of the trial court on questions involving the weight of the evidence.

¶ 38    Moreover, we find that this case is distinguishable from *People v. Brant*, 82 Ill. App. 3d 847 (1980), which was cited by the defendant. There, the Fourth District Appellate Court reversed the defendant's conviction for failure to reduce speed to avoid an accident, finding, in part, that

16

the State had failed to prove that the defendant drove carelessly prior to the accident. *Id.* at 852. In making this decision, the appellate court noted that the salient facts in evidence with regard to the collision were that the defendant struck a car parked on a portion of the street where all parking was prohibited, and the car was partially obscured from view by the shade of trees. *Id.* at 851. There was also evidence presented that the defendant was intoxicated at the time of the collision. *Id.* The appellate court found that, based on these facts, the only possible way to infer carelessness was to assume that because the defendant was intoxicated, he was careless. *Id.* The appellate court noted that, in light of the other facts, the evidence of the defendant's intoxication, without more, could not support an inference of carelessness sufficient to prove that the defendant drove carelessly prior to the accident. *Id.* at 851-52.

¶ 39    However, unlike in *Brant*, where, because of the tree, defendant could not see and thus could not know that the vehicle was parked ahead of him, the defendant here knew that the motorcycle was traveling ahead of him and that he had lost sight of the motorcycle while he was traveling on the downgrade. Accordingly, when we view the evidence in the light most favorable to the State, we find that the State provided sufficient evidence for the trial court to find that the defendant drove carelessly.

¶ 40    The defendant next challenges the sufficiency of the evidence that he failed to reduce his speed to avoid colliding with the motorcycle. The State is not required to prove that the defendant exceeded the speed limit to establish the offense of failure to reduce speed to avoid an accident because the offense can be committed regardless of the speed of the defendant's vehicle or the relevant speed limit. 625 ILCS 5/11-601(a) (West 2020); *Galarza*, 2023 IL 127678, ¶ 39. Instead, the State must prove that the defendant failed to decrease his speed as necessary to avoid colliding

17

with another person or vehicle. 625 ILCS 5/11-601(a) (West 2020); *Galarza*, 2023 IL 127678, ¶ 39.

¶ 41 The defendant here again contends that the State failed to present any evidence at trial of the speeds and locations of, and distances between, the defendant's vehicle and the motorcycle at the point when the defendant's vision was impaired by the sun. The defendant argues that the State did not present any evidence as to whether the pre-accident reduction, if any, of the speed of the motorcycle was gradual or rapid. In addition, the defendant contends that the inference by the trial court that the defendant did not brake before the collision was unfounded, as Officer Brieseacher's testimony indicated that the defendant braked immediately before the accident.

¶ 42 In support of his arguments, the defendant again cites *Brant*, 82 Ill. App. 3d at 852, which held that the failure to reduce speed element cannot be inferred merely from the fact that there was a collision. In *Brant*, the Fourth District rejected the argument that the fact of a collision standing alone is sufficient evidence to prove the offense of failure to reduce speed to avoid an accident. *Id.* "Based on the logic of that argument, anyone involved in an accident could properly be convicted for failure to reduce speed to avoid an accident." *Id.*

¶ 43 When viewing the evidence in its entirety, and construing all reasonable inferences from the evidence in the light most favorable to the State, we find that the trial court's finding that the defendant failed to reduce his speed to avoid the accident was not so unreasonable, improbable, or unsatisfactory that it justifies reasonable doubt as to the defendant's guilt. Again, the defendant's vehicle at the moment of impact was estimated to be traveling between 56 to 69 miles per hour in a 55 miles per hour speed zone. The evidence also showed that there was extensive damage sustained by both the defendant's vehicle and the motorcycle, there were no preimpact tire marks, the defendant first activated his brakes approximately "[h]alf of one second" before the collision,

18

and the defendant's statements following the accident indicated that he was aware that the motorcycle was ahead of him but that he was blinded by the sun. Given this circumstantial evidence, which is more than just the mere fact that a collision occurred, the trial court could draw reasonable inferences in favor of finding that the defendant failed to reduce his speed before hitting the motorcycle. See *Galarza*, 2023 IL 127678, ¶ 41 (finding that the trier of fact could draw reasonable inferences from the circumstantial evidence—heavy front-end damage to defendant's vehicle and airbag deployment on defendant's vehicle—that defendant failed to reduce his speed before hitting a tree). Accordingly, when viewing the evidence in the light most favorable to the State, we find a rational trier of fact could have found the defendant guilty of failure to reduce speed to avoid an accident beyond a reasonable doubt.

¶ 44    The defendant also contends that the trial court erred in denying both his motion for a directed verdict at the close of the State's case and his written motion for entry of judgment of acquittal filed after the trial court found him guilty. In response, the State argues that the defendant has forfeited these arguments on appeal because the defendant presented evidence after his oral motion for a directed verdict was denied and did not renew the motion at the close of all the evidence. "It is well settled that a defendant who chooses to present evidence after the denial of his motion for a directed verdict at the close of the State's case waives any error in the trial court's ruling on the motion unless he renews the motion at the close of all the evidence." *People v. Carter*, 2022 IL App (1st) 210261, ¶ 123. The defendant, however, argues that the State has forfeited its forfeiture argument where the State did not raise this argument either in its written motion for denial of the defendant's motion for entry of judgment of acquittal or during the hearing on the defendant's motion for acquittal. The defendant also contends that, regardless of whether the argument regarding the ruling on the motion for directed verdict was preserved for review on

19

appeal, his argument concerning the denial of the motion for entry of judgment of acquittal was preserved.

¶ 45　Forfeiture aside, we reject the defendant's arguments and conclude that the State presented sufficient evidence for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of failure to reduce speed to avoid an accident. A motion for directed verdict or motion for judgment notwithstanding the verdict (*n.o.v.*) should be granted only where all of the evidence, when viewed in a light most favorable to the opposing side, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Harris v. Thompson*, 2012 IL 112525, ¶ 15. An adverse ruling on a motion for directed verdict or judgment *n.o.v.* is reviewed *de novo*. *Id.*

¶ 46　A motion for a directed finding asserts that, as a matter of law, the evidence is insufficient to support a finding of guilty. *People v. Reinking*, 2024 IL App (4th) 230486, ¶ 97. The trial court must determine, after considering the evidence most strongly in the State's favor, whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt. *Id.* A motion for directed verdict asks whether the State's evidence could support a verdict of guilty beyond a reasonable doubt, not whether the evidence does support that verdict. *People v. Connolly*, 322 Ill. App. 3d 905, 915 (2001). Similarly, a motion for judgment *n.o.v.* should be granted where the State's evidence, when viewed in the light most favorable to the State, is insufficient to support a finding of guilty. *People v. Robinson*, 199 Ill. App. 3d 24, 38 (1989). The standard for granting a motion for judgment *n.o.v.* is high, and a judgment *n.o.v.* should not be entered if reasonable minds might differ as to inferences or conclusions to be drawn from the presented facts. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37.

20

¶ 47    As we have already found that the State presented sufficient evidence to prove the defendant guilty beyond a reasonable doubt of failure to reduce speed to avoid an accident, we also find that the evidence was sufficient to sustain the defendant's conviction under either of the above standards. In other words, after considering the evidence in the light most favorable to the State, we find that the evidence does not so overwhelmingly favor the defendant that either the entry of a directed verdict or a judgment *n.o.v.* would be proper.

¶ 48    Lastly, the defendant challenges his sentence of six months of conditional discharge. In challenging his sentence, the defendant complains about certain deficiencies that occurred during the sentencing hearing as well as the trial court's ultimate sentence decision. The defendant, in his initial brief, did not acknowledge that he failed to make these arguments in the trial court and thus did not argue plain error. Consequently, in its appellee brief, the State contends that the defendant has forfeited these arguments because he failed to make the necessary objections at the sentencing hearing and failed to file a motion to reconsider sentence. However, in response, the defendant raises plain error for the first time in his reply brief, which is sufficient to allow us to review his claims for plain error. See *People v. Williams*, 193 Ill. 2d 306, 348 (2000). The defendant then argues that we may review the claimed sentencing errors under either prong of the plain-error doctrine.

¶ 49    "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Thus, when a defendant fails to preserve a claim of sentencing error, we may review the claim only if the defendant establishes plain error. *Id.* at 545. The plain-error doctrine is a narrow and limited exception to the general rule of forfeiture applicable to unpreserved claims. *Id.* Under the plain-error rule, a reviewing court will review an unpreserved

21

sentencing error when a clear or obvious error occurs and: (1) the evidence at the sentencing hearing was closely balanced, or (2) the alleged error was so serious as to deny the defendant a fair sentencing hearing. *Id.* The first step in plain-error review is to determine whether there was clear or obvious error. *People v. Moon*, 2022 IL 125959, ¶ 22.

¶ 50 Section 6-601(a) of the Code (625 ILCS 5/6-601(a) (West 2022)) states that a violation of the provisions of chapter 625 is a petty offense unless otherwise designated as a misdemeanor or felony. The available sentencing options for a petty offense include, *inter alia*, a period of probation or conditional discharge not to exceed six months as well as supervision. 730 ILCS 5/5-4.5-75 (West 2022). Thus, in this case, the defendant's sentence of six months of conditional discharge was within the statutory sentencing range. However, the defendant contends that the trial court abused its discretion in imposing that sentence for the following reasons: the impact statements offered by Roseberry and Bumba exceeded the permissible scope of an impact statement; the trial court did not give the defendant an opportunity to make a statement in allocution; the trial court improperly considered, as a factor in aggravation, carelessness, which was a fact implicit in the criminal offense; and the trial court abused its discretion by failing to give due consideration to a disposition of supervision.

¶ 51 A trial court has broad discretion in imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). The reviewing court gives the trial court great deference when reviewing a sentence because the trial court, having observed the proceedings, is generally in a better position than the reviewing court to determine the appropriate sentence. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). The trial court has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id.* Thus, a reviewing court must not substitute its judgment for that of the trial court merely because it would

22

have weighed these factors differently. *People v. Cox*, 82 Ill. 2d 268, 280 (1980). When a sentence falls within the statutory guidelines, the trial court's decision will not be disturbed absent an abuse of discretion. *People v. Coleman*, 166 Ill. 2d 247, 258 (1995). A trial court abuses its sentencing discretion when the penalty imposed "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 52    In determining an appropriate sentence, the relevant factors that should be considered include the nature of the crime, the protection of the public, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 14. "The weight to be attributed to each factor in aggravation and mitigation depends upon the particular circumstances of the case." *People v. Garibay*, 366 Ill. App. 3d 1103, 1109 (2006). "The existence of mitigating factors does not obligate the trial court to impose the minimum sentence." *Id.* A trial court is presumed to have considered all the relevant factors, which includes the mitigating evidence presented, unless the record affirmatively shows otherwise. *Id.*

¶ 53    We will first address the defendant's contention that the trial court abused its discretion in failing to give due consideration to a disposition of supervision, so that the defendant could retain his driver's license. At the sentencing hearing, the defendant's counsel argued that if a judgment of conviction were entered against the defendant, his driver's license would be revoked. In addition, counsel presented evidence showing that, for the defendant to maintain his employment, it was important for him to be able to drive and that his employment opportunities would be limited if his driver's license were revoked. However, the trial court concluded, even after hearing the witnesses' testimony and defense counsel's arguments, that a sentence of supervision would not be in the interest of justice, and it would denigrate the seriousness and the consequences of the

23

offense. Thus, the record refutes the defendant's argument that the trial court failed to give due consideration to a disposition of supervision. Moreover, given the seriousness of the offense and the harm to the victims as a result of the defendant's conduct, we find that the trial court did not abuse its discretion in imposing a sentence of conditional discharge, rather than supervision. The revocation of the defendant's driver's license would be a collateral consequence of his conviction, not a consequence imposed by the trial court.

¶ 54    The defendant also argues that, when imposing the sentence, the trial court erred in considering the defendant's carelessness, which was already an element of the charged offense of failure to reduce speed to avoid an accident. A trial court is prohibited from considering, as a factor in aggravation, a fact implicit or inherent in the offense for which the defendant is convicted. *People v. Larson*, 2022 IL App (3d) 190482, ¶ 26. However, a trial court may consider the manner in which the victim's death was brought about, along with the seriousness, nature, and circumstances of the offense, which includes the nature and extent of each element of the offense committed by the defendant. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). Also, the severity of the sentence depends on the degree of harm caused to the victim and may be considered as an aggravating factor in determining the sentence, even in cases where serious bodily harm was arguably implicit in the offense for which a defendant was convicted. *Id.*

¶ 55    Here, when imposing the sentence, the trial court noted that the harm, grief, and misery caused by the defendant's traffic offense was incalculable and that the defendant was responsible for that harm, grief, and misery. The defendant, thus, argues that the trial court's decision to sentence him to conditional discharge was "premised upon the 'harm, grief, and misery' allegedly caused by [the defendant's] carelessness." However, based on our review of the record, we find that there is no indication that the trial court considered an element inherent in the offense when

24

determining the sentence. Instead, the trial court properly considered the serious harm to the victims and the "grief and misery" that was suffered as a result of the collision and found that a sentence of supervision would denigrate the seriousness of the offense and its consequences.

¶ 56     The defendant further contends that the trial court erred in not allowing him an opportunity to make a statement in allocution at the sentencing hearing where the trial court never asked the defendant if he wished to make a statement before the sentence was announced. Section 5-4-1(a)(6) of the Unified Code of Corrections (730 ILCS 5/5-4-1(a)(6) (West 2022)) provides that, at the sentencing hearing, the trial court must afford the defendant the opportunity to make a statement on his own behalf. However, in *People v. Miller*, 72 Ill. App. 3d 416, 419-20 (1979), the Second District Appellate Court found that the trial court's failure to ask a defendant whether he wished to make a statement on his own behalf before the sentence was pronounced was not an error of such magnitude to warrant summary reversal of the imposed sentence. Instead, a trial court's failure to specifically invite a defendant to address the court at sentencing is only a technical error. *Id.* Thus, while we do not condone the trial court's action, we are satisfied that, under the circumstances, the error does not require the vacation of the defendant's sentence where, at the sentencing hearing, the trial court heard the mitigating evidence presented by the defendant as well as defense counsel's arguments and then considered that mitigating evidence when making the decision to sentence the defendant to six months of conditional discharge.

¶ 57     Lastly, the defendant argues that the trial court erred by allowing victim impact statements that were impermissibly prejudicial to be read at the sentencing hearing. "Victim impact statements concerning the effects upon the victim's family are both relevant and admissible during the sentencing phase of a trial." *People v. Gonzales*, 285 Ill. App. 3d 102, 104 (1996). Section 6(a-1) of the Rights of Crime Victims and Witnesses Act (725 ILCS 120/6(a-1) (West 2022)) provides

that, where a defendant is convicted of a motor vehicle offense resulting in great bodily harm or death,

> "a representative of the deceased person shall have the right to address the court regarding the impact that the defendant's criminal conduct has had upon them. *** [T]he court has discretion to permit one or more of the representatives to present an oral impact statement. *** The court shall consider any impact statement presented along with all other appropriate factors in determining the sentence of the defendant."

However, the presentation of the victim impact statements "does not serve as an invitation to rail against the defendant or to recommend a certain sentence to the court." *Larson*, 2022 IL App (3d) 190482, ¶ 37. The trial court is obligated to limit any victim statements made to the impact of the offense upon the person giving the statement. *Id.* ¶ 40.

¶ 58 In the present case, the defendant argues that the statements from Roseberry and Bumba exceeded the scope of a victim's impact statement because, in their statements, they "rail[ed] against the judicial process," "demonize[d]" the defendant, and demanded a sentence that was more than court supervision. In Roseberry's statement, he talked about the injuries that he sustained and the suffering and personal losses that he experienced as a result of the collision, which included the suffering that he experienced knowing that Davis had lost her life while the defendant was able to continue living a normal life and was only charged with the offense of failure to reduce speed to avoid an accident. He also described the defendant's decision to proceed to trial as unforgivable and cruel, stating that the defendant was "worried about being inconvenienced for a year when [Davis] was killed, and [Roseberry's life] was completely altered." Also, Bumba, in her statement, described the ongoing emotional effects of losing her mother. However, she also described her feelings toward the defendant, noting that the defendant failed to take any

26

responsibility for his actions, that he dragged the case out for over a year, and that he had zero sympathy. She stated that her mother's life was worth more than court supervision and that the defendant should have a conviction that would permanently be on his record.

¶ 59    Although some portions of these statements may have exceeded the proper bounds of a victim impact statement, there is no indication in the record that the trial court was unduly influenced by those statements. Other than the trial court's general comment at the outset that it had considered, among other things, the victim impact statements, at no point in its pronouncement of the sentence did the trial court refer to the contents of any of the victim impact statements. The mere fact that the trial court allowed the statements does not establish that it was particularly influenced by those statements. To the extent that the trial court relied on the victim impact statements, we presume that it did not consider the portions of the statements that may have been improper. See *People v. Ashford*, 168 Ill. 2d 494, 508 (1995) (it is well established that where a sentencing hearing is conducted before the trial court, the trial court is presumed to consider only competent and relevant evidence in determining the sentence). Therefore, we find that, if any of the above allegations raised by the defendant are considered error, any such error was not of such magnitude as to deny the defendant a fair sentencing hearing. In addition, we find that, based on our above analysis, the evidence at the sentencing hearing was not closely balanced. Accordingly, we conclude that the defendant failed to establish plain error under either the first or second prong.

¶ 60                                III. CONCLUSION

¶ 61    For the foregoing reasons, the judgment of the circuit court of Clark County is affirmed.


¶ 62    Affirmed.

27